Jose DOCTOR

v.

STATE of Rhode Island.

No. 2004–78–Appeal.

Supreme Court of Rhode Island.

May 4, 2006.

Leo F. Manfred, Westerly.

Christopher R. Bush.

ORDER

Jose Doctor appeals from the Superior Court's denial of his application for post-conviction relief. This case came before the Supreme Court for oral argument on April 4, 2006, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth herein, we deny the appeal and affirm the judgment of the Superior Court.

This case stems from a shooting that took place in Providence on August 11, 1990 and resulted in the death of one Willie Davis. A jury convicted Jose and his brother Alexis [1] of murder, conspiracy, and two counts of assault with a dangerous weapon.[2] The brothers were sentenced to life imprisonment on the murder charge, ten years suspended with probation on the conspiracy charge, and five years suspended with probation on each of the two assault charges. We affirmed the convictions in State v. Doctor, 690 A.2d 321 (R.I. 1997).

After their convictions were affirmed, both Jose and Alexis filed applications for postconviction relief in the Superior Court; and, on September 29, 2003, a hearing was held on those applications. On March 18, 2004, the hearing justice entered a judgment denying the applications of both Jose and Alexis. Both applicants then appealed to this Court. In Doctor v. State, 865 A.2d 1064 (R.I.2005), we affirmed the Superior Court's denial of postconviction relief with respect to Alexis. We now address Jose's appeal.

Many of the contentions that Jose advances on appeal are identical to the contentions that we previously rejected in our opinion affirming the Superior Court's denial of Alexis's application for postconviction relief. Specifically, Jose's arguments concerning (1) ineffective assistance of counsel (based upon his attorney's alleged failure to have discussed a proposed *Fenner* instruction[3] with him and the at-

---

1. Jose and Alexis Doctor will be referred to by their first names throughout this opinion in order to eliminate any possible confusion.

2. The factual background and procedural history relevant to the criminal trials and ultimate convictions of both Jose and Alexis are set forth in this Court's opinion affirming those convictions, State v. Doctor, 690 A.2d 321 (R.I.1997), and will not be fully reiterated here.

3. See State v. Fenner, 503 A.2d 518 (R.I.1986). In that case we stated as follows:

"[I]t should be the obligation of a trial justice to inform counsel in advance if he or she intends to advise prospective jurors or jurors who have been selected to serve on a particular case that the defendant is in custody for the purpose of neutralizing any inference that might otherwise be formed. In the event that counsel objects to such an admonition, he or she has an obligation to inform the trial justice forthwith before the admonitions have been given. In such a situation, the trial justice should forego making such a statement to the jurors * * *. In other words, the defendant

torney's failure to have objected to said instruction when it was given [4] and the attorney's alleged failure to have pursued an investigation regarding a material discrepancy in evidence) and (2) newly discovered evidence in the form of the recanted testimony of a particular witness were already rejected by this Court in *Doctor*, 865 A.2d at 1067–71. It is not necessary for us to readdress those arguments at this time.

Jose does raise some contentions on appeal that this Court did not specifically address in our opinion denying Alexis's appeal. In particular, Jose argues that the giving of the *Fenner* instruction to the jury during his trial, in addition to giving rise to a claim of ineffective assistance of counsel, also violated his due process and equal protection rights under the Fourteenth Amendment to the United States Constitution (and corresponding rights afforded by the Rhode Island Constitution) and constituted judicial error. Both of these arguments appear to center upon the

fact that there is no evidence in the record of a discussion between the trial justice and Jose's attorney regarding the proposed *Fenner* instruction, no evidence in the record of a discussion whereby the judge informed Jose of his right to object to the proposed instruction, and no evidence in the record of Jose's waiver of his right to object to the proposed instruction.[5] Jose contends that the discussions regarding the proposed *Fenner* instruction as well as a statement concerning his decision with respect to the proposed instruction should have been placed on the record.[6]

After carefully reviewing the record in this case, however, it is clear to us that Jose failed to raise these contentions at the hearing on his application for postconviction relief. Consequently, in accordance with our settled appellate practice, we will not consider these belatedly raised contentions on appeal. *Harvard Pilgrim Health Care of New England, Inc. v. Rossi*, 847 A.2d 286, 293 (R.I.2004) ("This Court will

---

should have his choice in determining whether this type of instruction should be given, but that choice should be exercised before the admonition is given, not afterward." *Id.* at 522.

4. During Jose and Alexis's trial in January 1995, the trial justice instructed the jury as follows:

"[Y]ou will note the fact there are marshals in the courtroom. I simply would advise you that the defendants are in custody for lack of bail. That is not at all germane, nor is it important to the jury's task in considering guilt or innocence in this case. In no way does their detention for lack of bail diminish the presumption of innocence which surrounds each of them. The mere fact that they have been detained for lack of bail must not prejudice you against them at all, nor should their detention generate any sympathy for them, either. The fact of the matter is you should disregard that detention, to the extent you regard it at all, as simply a neutral fact and give it no weight whatsoever."

5. Jose's arguments concerning due process, equal protection and judicial error also appear to be based upon his contention that he was prejudiced by the giving of the *Fenner* instruction to the jury in this case. We previously held, however, that Alexis "was not prejudiced by the *Fenner* instruction that was given to the jury at the January 1995 trial." *Doctor v. State*, 865 A.2d 1064, 1069 (R.I. 2005). The same reasoning that we relied upon in reaching that conclusion in that case also applies to Jose's contention in this case.

6. In addition to his argument that these matters should have been placed on the record, Jose also contends that there is no evidence that his attorney ever advised him about his rights with respect to the *Fenner* instruction. Jose argues that, pursuant to Rule 803(7) of the Rules of Evidence, the absence of any evidence proving that he was informed of his right to object to the proposed *Fenner* instruction is evidence that he was not advised of this right. We conclude that there is no merit to this contention.

not review issues that are raised for the first time on appeal."); *Montecalvo v. Mandarelli*, 682 A.2d 918, 926 (R.I.1996) ("A party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal."); *see also Pollard v. Acer Group*, 870 A.2d 429, 430, 432–34 (R.I.2005).

Although, pursuant to our "raise-or-waive" rule, we need not reach the substance of the applicant's argument concerning the lack of an indication in the record as to compliance with the procedure outlined in *Fenner*, we would note that there is no constitutional requirement to that effect—even though it would surely be preferable for there to be record evidence of compliance with the *Fenner* requirement.

Moreover, while there is no record of any discussion or agreement regarding the giving of such an instruction in the present case, we previously held that "the weight of credible evidence presented" at the postconviction relief hearing suggests that the trial justice did confer with counsel concerning the proposed instruction and that counsel conferred with both Jose and Alexis about the instruction. *Doctor*, 865 A.2d at 1068. The only evidence presented which suggested that this did not occur was Jose's own testimony that no one conferred with him about the *Fenner* instruction, which the hearing justice found to be not credible. As we stated in *Doctor*, 865 A.2d at 1068 n. 5, "[I]n reviewing an application for postconviction relief, we defer to the trial justice's findings on credibility unless clearly wrong." There is no evidence in this case that the trial justice was clearly wrong in making this credibility assessment.

1. *State v. Figueroa*, 673 A.2d 1084 (R.I.1996).

For these reasons, we affirm the judgment of the Superior Court, to which the papers may be remanded.

Justice SUTTELL did not participate.